F. H. Lawson Company, et al., Appellants,

*v.*

Lenvil D. Rambo, Appellee.

465 S.W.2d 732.

(*Nashville*, December Term, 1970.)

Opinion filed April 5, 1971.

Charles C. Trabue, III, Trabue, Minick, Sturdivant & Harbison, Nashville, or appellants.

J. Travis Price, Springfield, for appellee.

MR. JUSTICE CRESON delivered the opinion of the Court.

This cause comes to this Court on appeal from a judgment of the General Sessions Court of Robertson County. That court awarded Lenvil D. Rambo compensation benefits in the sum of $1,299.95 for an alleged injury resulting in a herniated condition.

In the course of this opinion, the parties will be referred to as they appeared in the Court below; that is, Lenvil D. Rambo as petitioner, and F. H. Lawson Company, et al. as defendants.

It appears from the record in this cause that petitioner moved to Springfield, Tennessee from Ohio in 1962, and began working for Nutone, Inc. He continued employment with Nutone, Inc. until the early part of 1968. At that time, F. H. Lawson Company purchased the property and facilities of Nutone. Defendant company continued to employ petitioner in a similar capacity; that is, a quality inspector. Petitioner was not

given a physical examination by a doctor employed or retained by defendant company.

Petitioner's testimony was that on July 12, 1968, he was working on the paint line; that when he reached out to take hold of an object on the line, he felt a sharp pain in his left side; that he told the paint foreman, Thomas W. Cannon, of his sudden pain, whereupon Mr. Cannon recommended petitioner sit down for a while; and that after he had sat for a while, he felt better and went back to work. Further evidence revealed that July 12, 1968, was on a Friday; that the following Monday petitioner returned to work and worked four days, although experiencing recurring pain and appearance of a hernia on his left side; that each of these recurrences of pain was known by petitioner's supervisor because petitioner was forced to discontinue work and rest for a while; and finally, that on the 18th of July, petitioner could no longer push the hernia back in and would have to seek medical attention.

On July 19, 1968, petitioner entered the hospital. The following day surgery was performed for an inguinal hernia on the left side. He remained in the hospital for two weeks, remaining off work and under the doctor's care until September 3, 1968. On that date he returned to his regular employment, but voluntarily resigned some months later.

Petitioner testified that he only seeks benefits for temporary total disability for six weeks, and for medical expenses incurred. Petitioner testified on direct that he experienced a hernia on his right side in the 1940s; but that prior to July 12, 1968, he had never experienced a protrusion or a herniated condition on his left side,

nor was he bothered by any sensitivity or weakness on his left side. However, upon cross-examination, petitioner contradicted himself. His testimony is as follows:

"Q. Now, you had actually had some trouble with your left side way back in 1964, had you not?

A. In 1964, that's when I was working with Lawson, yes—well—

Q. I am talking about back in December, 1964.

A. I mean with Nutone.

Q. While you were working with Nutone you had some trouble with your left side where that hernia is now, did you not?

A. Yes, sir.

Q. Am I correct about the date, December of 1964?

A. Well, it was in that neighborhood, what I mean, I don't remember that.

Q. Were you down here in Springfield then when you had that trouble?

A. Yes.

Q. When you had that trouble in December, 1964 you were sent to a doctor here in Springfield is that correct?

A. Yes.

Q. That was Dr. Qualls in Springfield?

A. Yes.

Q. And Dr. Qualls diagnosed you as having a hernia on the left side back in December, 1964, did he not?

A. Yes.

Q. And recommended you have surgery for that hernia back in December, 1964, did he not?

A. Well, he mentioned it, what I mean—

Q. Well, he recommended you have surgery?

A. Yes.

Q. But at that time, back in December of 1964, you were able to push that hernia back in so you didn't have surgery, isn't that true?

A. That's right.

Q. And following that time, from December, 1964, you were able to continue with your work?

A. Yes.

Q. But still, every now and then, that hernia on the left-hand side would come out and you would push it back in, isn't that true?

A. It wasn't giving me no trouble, what I mean—

Q. I am not asking whether it was hurting, I want to know if, as a matter of fact, following that examination by Dr. Qualls in December, 1964, you continued to work but while you continued to work every once in awhile this hernia on the left side would come out and you would push it back in, isn't that true?

A. Yes. What I mean, it wasn't paining or anything.

Q. I understand it wasn't paining you but it would protrude and you would push it back in.

A. It would get back in.

Q. You would push it back in, isn't that correct?

A. Yes.

Q. And that condition continued right on up until the date of the last accident and when was it, in July of 1968?

A. No, sir, it hadn't given me any trouble for about, way over a year.

Q. I understand it hadn't given you any trouble—

A. What I mean, I didn't have to do anything to it.

Q. But you had been pushing it back in?

A. Yes.''

Defendants did not put on any proof, but rather made a motion at the end of petitioner's proof to dismiss the case on the ground that petitioner's hernia is not compensable within T.C.A. sec. 50-1009.

The trial court found for petitioner and awarded him $619.95 for medical expenses incurred and $680.00 for ''total temporary disability loss of wages''; totaling $1,299.95.

Defendants assign as errors that the court erred in finding petitioner's hernia compensable; that the Court erred in awarding temporary total benefits without material evidence; and that the court erred in awarding

petitioner his actual loss of wages contrary to the provisions of the Workmen's Compensation Act.

Without answering assignments of error II and III, we are of opinion that this case must be reversed and dismissed. In view of the foregoing testimony of petitioner, we can only conclude that petitioner's injury and resulting hernia is non-compensable; that is, outside the scope of T.C.A. sec. 50-1009. The pertinent language of that statute is as follows:

"In all claims for compensation for hernia or rupture, resulting from injury by accident arising out of and in the course of the employee's employment, it must be definitely proven to the satisfaction of the court:

First. That there was an injury resulting in hernia or rupture.

Second. That the hernia or rupture appeared suddenly.

Third. That it was accompanied by pain.

Fourth. That the hernia or rupture immediately followed the accident.

Fifth. That the hernia or rupture did not exist prior to the accident for which compensation is claimed."

Petitioner argues that when defendant company bought the facilities and property of Nutone, Inc., it did not give petitioner a physical examination, and, therefore, took petitioner in the physical condition that he then was. This is the usual rule, but this Court has held that the Legislature did not intend for the general rule to apply to a herniated condition. *Matthews v. Harda-*

*way Contracting Co. et al.* (1942) 179 Tenn. 98, 163 S.W. 2d 59. Justice Neil, writing for this Court in that case, stated:

"The Tennessee act expressly provides in subsection 5 that it must be definitely proven 'that the hernia or rupture did not exist prior to the accident for which compensation is claimed.' While we are pleased to give a liberal construction to the act, we cannot ignore what we consider a clear and unequivocal provision of the act. The foregoing is not in conflict with decisions of this Court which have been cited by counsel, wherein it was held that injuries which aggravate an existing physical ailment or disease are compensable, because in the cases referred to where the rule was applied *there were no statutory limitations upon the right to recovery;*"

\* \* \* \* \* \*

"We think the legislature clearly intended to place certain limitations and restrictions upon the right to recover compensation for injuries causing a hernia and also to the aggravation or enlargement of a pre-existing hernia. The statute undertakes to point out and distinguish the injuries that are compensable and those that are non-compensable, and for the injured employee to recover he must bring his case within the provisions of the amendatory act. There are many injuries that are noncompensable and which cannot be made compensable under the Court's rule of liberal interpretation."

In view of the foregoing, it appears to this Court that the material evidence in this case in contrary to the

finding of the trial judge. Thus, we reverse the court below, and dismiss. The costs of this case are assessed against petitioner, Lenvil D. Rambo.

DYER, CHIEF JUSTICE, and CHATTIN, HUMPHREYS and McCANLESS, JUSTICES, concur.